UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NANCY LARA-GRIMALDI, individually and as Administratrix of Estate of Alexandra Grimaldi,

                    Plaintiff,

v.

COUNTY OF PUTNAM, *et al.*,

                    Defendants.

No. 17-CV-622 (KMK)

OPINION & ORDER

Appearances:

Keith M. Szczepanski, Esq.
Beldock Levine & Hoffman LLP
New York, NY
*Counsel for Plaintiff*

James A. Randazzo, Esq.
Portale Randazzo LLP
White Plains, NY
*Counsel for Moving Defendants*

Drew W. Sumner, Esq.
Sumner Law LLP
White Plains, NY
*Counsel for Moving Defendants*

KENNETH M. KARAS, United States District Judge:

    Nancy Lara-Grimaldi ("Plaintiff"), individually and as Administratrix of the Estate of Alexandra Grimaldi ("Grimaldi"), brings the instant Action against, among others, the County of Putnam ("Putnam County"), Putnam County Sheriff Donald Smith ("Smith"), Correction Officer ("CO") Angela McGoorty ("McGoorty"), CO Richard Greagor ("Greagor"), CO Anthony Colello ("Colello"), and CO Trudy Giampaolo ("Giampaolo") (collectively, "Moving

Defendants"), alleging that Moving Defendants denied her Fourteenth Amendment right of familial association with Grimaldi. (*See* Second Am. Compl. ("SAC") (Dkt. No. 67).)[1] Before the Court is Moving Defendants' partial Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Not. of Mot. (Dkt. No. 58).) For the reasons that follow, the Motion is granted.

## I. Background

### A. Factual History

The Court assumes familiarity with the alleged facts of the case, as described in detail in a prior Opinion & Order (the "Opinion") issued on March 29, 2018. (*See* Opinion 3–8 (Dkt. No. 43).) The Court recounts only those allegations, drawn from the Second Amended Complaint, necessary for consideration of the instant Motion. The alleged facts are assumed true for the purpose of resolving the instant Motion.

In 2012, "Grimaldi began struggling with an opioid addiction," (SAC ¶ 27), and was thereafter arrested multiple times in Putnam County for heroin possession, (*id.* ¶¶ 28–29). On October 27, 2015, Grimaldi was arrested and charged with violating the terms of her probation, possession of a hypodermic needle, and criminal possession of marijuana in the fourth degree. (*Id.* ¶¶ 30–33.) After being taken into custody, she was remanded to Putnam County Correctional Facility ("PCCF"). (*Id.* ¶ 34.) At PCCF intake, she stated "that she had previously attempted suicide, that she injected heroin within the last day, and that she suffered from mental health issues, including bipolar disorder." (*Id.* ¶¶ 43–44.) The next day, October 28, 2015, "Grimaldi began to suffer from heroin withdrawal symptoms." (*Id.* ¶ 61.) "[A]t approximately

---

[1] Plaintiff additionally names as Defendants Karen Jackson, Steven Napolitano, Christopher Stewart, William Spinelli, Jennifer Wilkinson, Keith Puhekker, Michelle Nigro, John Cassidy, and numerous John Does, who do not join in the instant Motion. (*See* SAC 1.)

2

3:20 p.m." that day, "Grimaldi hanged herself on her cell bars with a bedsheet." (*Id.* ¶¶ 2, 66.) About "15–20 minutes later," Grimaldi was found "unresponsive"; she "was not breathing and her heart was not beating." (*Id.* ¶¶ 67, 71.) She was resuscitated and transported to Putnam Hospital Center (the "Hospital"), where she was placed in the intensive care unit ("ICU"), "connected to a respirator," and a "tube was inserted into her trachea." (*Id.* ¶¶ 72–75.)

While at the Hospital, COs McGoorty, Greagor, Colello, and Giampaolo "were stationed in . . . Grimaldi's room and the area directly outside her room." (*Id.* ¶¶ 78–79.) These COs were allegedly placed there pursuant to a Putnam County "policy and/or practice of stationing officers inside ICU rooms when the patient is in the custody . . . , even when [the patient is] on life support or [is] otherwise unresponsive." (*Id.* ¶ 82.) While stationed in the room, the COs "physically and intentionally interfered with [Plaintiff and other] family members' access to . . . Grimaldi as [Plaintiff] placed herself next to . . . Grimaldi's bed in the very small ICU room." (*Id.* ¶ 79.) Plaintiff "asked McGoorty to move outside the room," but "McGoorty refused to leave and stated that she was ordered to remain by . . . Grimaldi's bedside." (*Id.* ¶ 80.) This order allegedly "came from . . . [Sheriff] Smith," who is allegedly "responsible for all policies . . . at PCCF." (*Id.* ¶¶ 13, 81.) Plaintiff thereafter spoke with Smith, who stated "that he would have the [COs] removed. (*Id.* ¶¶ 83–84.) However, the COs "remained in . . . Grimaldi's room for several days." (*Id.* ¶ 84.) Only after "[a]pproximately four to five days" were the COs "removed." (*Id.* ¶ 85.)

In "late January or early February 2016," Grimaldi was moved to a different hospital. (*Id.* ¶ 93.) "On or about May 13, 2016, . . . Grimaldi passed away . . . as a direct result of the injuries she sustained at PCCF." (*Id.* ¶ 94.)

3

B. Procedural History

The initial Complaint was filed on January 26, 2017. (Compl. (Dkt. No. 1).) On March 29, 2018, the Court issued the prior Opinion & Order dismissing the Complaint without prejudice. (Opinion (Dkt. No. 43).) On April 30, 2018, Plaintiff filed a First Amended Complaint. (Dkt. No. 44.)[2]

Moving Defendants filed the instant Motion To Dismiss on September 17, 2018. (Not. of Mot.; Decl. of James A. Randazzo, Esq. in Supp. of Mot. ("Defs.' Decl.") (Dkt. No. 59); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 60).) On October 26, 2018, Plaintiff filed a response in opposition to the Motion. (Reply Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 64).) On November 9, 2018, the Parties stipulated that Plaintiff would amend the First Amended Complaint to name as Defendants several individuals who had previously been unidentified, that the instant Motion would "include the newly identified" individuals, and that supplemental briefing was unnecessary. (Dkt. No. 66.) The same day, Plaintiff filed the instant Second Amended Complaint. (SAC (Dkt. No. 67).)[3] On November 16, 2018, Moving Defendants filed a reply. (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 69).)

## II. Discussion

A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

---

[2] The First Amended Complaint was initially filed incorrectly on ECF. It was correctly filed on May 7, 2018. (Dkt. No. 46.)

[3] The Second Amended Complaint was initially filed incorrectly on ECF. It was correctly filed on December 6, 2018. (Dkt. No. 74.)

4

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)).

Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Finally, the Court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted).

B. Analysis

As relevant here, Plaintiff alleges that COs McGoorty, Greagor, Colello, and Giampaolo — acting on Sheriff Smith's orders and pursuant to a Putnam County policy — positioned themselves inside Grimaldi's ICU room at the Hospital for about five days, thereby interfering with Plaintiff's access to Grimaldi, in violation of Plaintiff's Fourteenth Amendment right to familial association with Grimaldi. (SAC ¶¶ 108–15, 120.)

Moving Defendants seek to dismiss this claim on grounds that Plaintiff fails to plausibly state a familial-association claim and that, in any event, the individual Defendants are entitled to qualified immunity. (*See generally* Defs.' Mem.) The Court addresses each argument separately to the extent necessary.

1. Familial-Association Claim

"The Fourteenth Amendment guarantees a substantive right under the Due Process Clause to intimate familial association." *Gorman v. Rensselaer County*, 910 F.3d 40, 47 (2d Cir. 2018) (ultimately citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618–19 (1984)).[4] This "right is

---

[4] The First Amendment protects an analogous right to familial association where the "associational interest[] [is] related to speech and petition." *Pizzuto v. County of Nassau*, 240 F. Supp. 2d 203, 208 n.2 (E.D.N.Y. 2002). However, "[w]here the intimate association right at

6

constitutionally protected 'as a fundamental element of personal liberty.'" *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (quoting *Roberts*, 468 U.S. at 618). To state a claim for infringement of this right, a plaintiff must allege "conduct so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Gorman*, 910 F.3d at 47 (citation and quotation marks omitted). Further, because "only deliberate conduct implicates due process," a plaintiff must allege that the "state action was specifically intended to interfere *with the family relationship*." *Id.* (emphasis added).

Here, Plaintiff alleges that, while Grimaldi was being treated in the Hospital following her attempted suicide, COs McGoorty, Greagor, Colello, and Giampaolo "stationed" themselves in Grimaldi's ICU room, during which time they "physically and intentionally interfered with family members' access to . . . Grimaldi as [Plaintiff] placed herself next to . . . Grimaldi's bed in the very small ICU room." (SAC ¶¶ 75–79.) Plaintiff further alleges that the COs refused Plaintiff's request to "move outside the room" on grounds that Sheriff Smith — who was carrying out a Putnam County policy — had directed them to stay inside the room. (*Id.* ¶¶ 80–83.) Only after "[a]pproximately four to five days" were the COs removed. (*Id.* ¶ 85.)

The Court is sympathetic that Plaintiff and her family were experiencing deep pain during this period and that the presence of Putnam County correction officers in Grimaldi's hospital room may well have been less than ideal. However, Plaintiff has not alleged facts plausibly suggesting that Moving Defendants "specifically intended to interfere with the family

---

issue is tied to familial relationships and is independent of First Amendment retaliation concerns" — as alleged here — courts "employ[] an analysis under the framework of the Fourteenth Amendment right to substantive due process." *Garten v. Hochman*, No. 08-CV-9425, 2010 WL 2465479, at *4 (S.D.N.Y. June 16, 2010) (citing, inter alia, *Patel v. Searles*, 305 F.3d 130, 136–38 (2d Cir. 2002)); *see also Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 147 (D. Conn. 2013) (same).

relationship" between Plaintiff and Grimaldi.  *Gorman*, 910 F.3d at 48.  Plaintiff alleges only that the COs "physically and intentionally interfered with [Plaintiff's] access" to Grimaldi.  (SAC ¶ 79.)  This "bald[] asserti[on]," however, is conclusory, *Alharbi v. Miller*, 368 F. Supp. 3d 527, 572 (E.D.N.Y. 2019) (citing *Gorman*), as Plaintiff does not allege facts explaining *how* the COs or Smith interfered with her access to Grimaldi.  There is no allegation, for example, that the COs or Smith separated Plaintiff from Grimaldi or obstructed Plaintiff from communicating or otherwise interacting with Grimaldi.  *See Anthony v. City of New York*, 339 F.3d 129, 142–43 (2d Cir. 2003) (considering, and ultimately rejecting, familial-association claim based on family members' "separation" from each other); *Albert v. City of New York*, No. 17-CV-3957, 2018 WL 5084824, at *8 (E.D.N.Y. Oct. 18, 2018) (noting that "[a] plaintiff may allege a claim based on familial association when the state *separates* family members during a critical and traumatic moment" (emphasis added) (citing *Anthony*)).  Although Plaintiff argues that "the manner in which [the COs] monitored . . . Grimaldi as she received medical treatment was conscience shocking," (Pl.'s Mem. 5), she does not explain how the alleged "monitoring" — an allegation which does not appear in the Second Amended Complaint — interfered with the familial relationship or what, specifically, was "conscience shocking."  Finally, even assuming Plaintiff's allegations of interference were sufficiently factually developed, Plaintiff does not plausibly allege that Moving Defendants acted with the "specific[] inten[t] to *interfere with the family relationship*."  *Gorman*, 910 F.3d at 48 (emphasis added).  There is no allegation that the COs or Smith said or did anything that would suggest they sought to disrupt Plaintiff's relationship with Grimaldi or acted out of an animus to Plaintiff, Grimaldi, or their family.  Nor is there an allegation that Putnam County, in maintaining its alleged policy or practice of "placing law enforcement officers in the hospital rooms of individuals who were unresponsive and/or

incapacitated," (SAC ¶ 120; *see also id.* ¶ 82 (same)), acted with the intent to separate family members from each other or otherwise interfere with familial relationships.

Because Plaintiff fails to allege facts plausibly suggesting that Moving Defendants interfered with her familial relationship with Grimaldi and, in so doing, specifically intended to interfere with that relationship, her Fourteenth Amendment substantive due process claim must be dismissed. *See Alharbi*, 368 F. Supp. 3d at 572 (dismissing familial-association claim where the plaintiffs did "not allege[], other than by baldly asserting that [the] defendants harbor[ed] discriminatory animus against them because of their national origin and religion, that the [defendants] intended . . . to interfere with any of the specific familial units identified in the amended complaint"); *see also Partridge v. City of Benton*, No. 18-CV-1803, 2019 WL 2864365, at *4 (8th Cir. July 3, 2019) (dismissing familial-association where the plaintiffs "did not allege . . . that [the defendant's conduct] was *directed at* their relationship with [their daughter]" (emphasis added) (citing, inter alia, *Gorman*, 910 F.3d at 47–48)); *Amaker v. Annucci*, No. 14-CV-9692, 2016 WL 5720798, at *4 (S.D.N.Y. Sept. 30, 2016) (dismissing familial-association claim where the challenged prison regulation did "not seriously, if at all, actually curtail [the plaintiff's] freedom to associate and to receive visitors," as it did "not limit the number of visitors [he] can receive, which visitors [he] can receive, or how often [he] can receive them"), *aff'd*, 721 F. App'x 82 (2d Cir. 2018).

### 2. Qualified Immunity

Moving Defendants argue that, even assuming Plaintiff has plausibly alleged a familial-association claim, the individual Defendants are entitled to qualified immunity. (Defs.' Mem. 7–8; Defs.' Reply 3.)

"Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (citation and quotation marks omitted). In determining whether a right is clearly established, the "inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (citation and quotation marks omitted). "In the Second Circuit, 'a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.'" *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 702 (S.D.N.Y. 2011) (quoting *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004)). Further, qualified immunity is an affirmative defense, *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012), one that "[t]ypically . . . will rest on an evidentiary showing of what the defendant did and why," *Amaker v. Lee*, No. 13-CV-5292, 2019 WL 1978612, at *17 (S.D.N.Y. May 3, 2019) (quotation marks omitted) (ultimately citing *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003)). Where the qualified immunity defense is raised "at the motion to dismiss stage, defendants must accept a more stringent standard." *Id.* (quotation marks and alterations omitted) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). "Not only must the facts supporting the defense appear on the face of the complaint, but . . . the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna*, 386 F.3d at 436 (citations, quotation marks, and alterations omitted)).

The alleged familial-association violation in this case occurred in October 2015. (*See* SAC ¶¶ 2, 61, 74–85.) At that time, "Second Circuit law on the [central] issue [in this case] — whether intentional interference with the familial relationship is necessary to make out a constitutional claim of deprivation of the right to familial association — was not clearly established." *McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *6 (S.D.N.Y. Dec. 28, 2018) (citation and quotation marks omitted). Only in December 2018, when the Second Circuit published its decision in *Gorman*, was the issue clearly established. *See Gorman*, 910 F.3d at 47–48 (noting that "this Circuit has never squarely decided [the] issue" whether "intimate association claims are limited to situations in which the state actor intentionally targets the familial relationship," and then holding that "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship"); *see also Cruz v. City of New Rochelle*, No. 13-CV-7432, 2017 WL 1402122, at *28 (S.D.N.Y. Apr. 3, 2017) (noting, in pre-*Gorman* decision, that "[b]ecause the Second Circuit has not decided whether intentional interference with the familial relationship is necessary to make out a constitutional claim of deprivation of the right to familial association . . . the law on this issue is not clearly established" (citations omitted)). Here, as discussed above, "Plaintiff has not alleged any facts suggesting [that Moving Defendants] intentionally interfered with [her] relationship with [Grimaldi]." *McKenzie*, 2018 WL 6831157, at *6. "Therefore, individual Defendants' "alleged misconduct does not fall within the category of behavior that clearly violated [Plaintiff's] rights," and, accordingly, they are entitled to qualified immunity. *Id.*

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. Plaintiff's

11

familial-association claim is dismissed with prejudice, as amendment would be futile.

The Clerk of the Court is respectfully requested to terminate the pending Motion. (Dkt. No. 58.)

SO ORDERED.

DATED: August ___, 2019
White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE